UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ALICIA SPRAGUE,

                                    Plaintiff,            **AFFIDAVIT**

vs.

T.C. INN, INC. d/b/a THE OLD SCHOOLHOUSE
INN & RESTURANT & JULIE MARKERT,          Civil Action No.:
                                                          3:19-CV-1263 (LEK/ML)
                                    Defendants.

Joseph J. Steflik, Jr., Esq., being duly sworn, deposes and states:

1. I am an attorney duly admitted in the State of New York and the United States District Court for the Northern District of New York, am fully familiar with the facts of this matter, and submit this affidavit in support of the cross-motion by T.C. Inn, Inc. and Julie Markert ("Markert"), and in opposition to the motion by Alicia Sprague ("Sprague").

2. Sprague filed a complaint against T.C. Inn, Inc. and Markert on approximately October 13, 2109. The complaint claimed violations of the <u>Fair Labor Standards Act</u> and the NYS <u>Labor Law</u> together with an assault and battery claim. The Plaintiff, in January 2020, filed an amended complaint withdrawing the assault and battery claim. The amended complaint contains two (2) causes of action:

      1. Count One – violation of NYS Wage and Hour Law for allegedly failing to compensate for regular and overtime hours together with allegedly failure to provide proper notices.

      2. Count two – violation of <u>FLSA</u> to pay overtime.

(copy is attached as <u>Exh</u>. "A").

1

3. T.C. Inn, Inc. and Markert filed their answer to the amended complaint on February 13, 2020. The answer denied the allegations and raised affirmative defenses. The following are relevant to those motions:

1. FLSA statute of limitations (first)

2. NYS Labor Law statute of limitations (Second)

3. De minimus violations (Third)

4. Good faith (Fifth)

5. Good faith (Sixth)

6. T.C. Inn paid all required compensation (Seventh)

7. T.C. Inn did not suffer or permit Sprague to work excess hours (Ninth)

(copy is attached as Exh. "B").

4. A deposition of Sprague was conducted on July 22, 2020. During that deposition Sprague testified as follows with regard to compensation:

1. "Q. What was the wage rate you talked to?

A. There – I don't know." (T.10)

2. "Q. Now, in addition to the wage - - that was an hourly wage.

A. Yes.

Q. Okay. Did you also receive tips?

A. Yes

Q. How did that work into the compensation?

A. We got tips as they were left on the table. You know, we only claimed our cash tips and then our credit card tips.

2

Q. How did – how were you given – were those tips, did you take them or did you put them in a pool or – how did tips work?

A. Tips were ours.

Q. So if you work – if you – if you waited on a table and you got the tip, that was your tip.

A. Yes." (T. 11)

3. Q. "Okay. How did the cash, did you just take the cash?

A. Yes.

Q. Okay. Was there any method of telling the T.C. Inn how much tips you received?

A. Before pay week, we filled out a tip slip.

Q. Okay. Did that tip slip show the cash tips?

A. Yes.

Q. How did the credit card tips work?

A. We were tipped out at the end of the night.

Q. Explain how that occurred.

A. You would print out a tip report, the bartender would print out a tip report on our credit card tips that went along with our waitress number, and then the bartender would pay us our credit card tips at the end of the night. (T. 12)

5. At the deposition Sprague was unable to articulate any alleged regular hours or overtime hours which were unpaid:

1. Q. Were you ever not paid for any hours you worked?

3

A. Yes.

Q. Okay. When?

A. I really don't know.

Q. Did you keep any records of any of those days you worked that were not paid or any hours that you worked and were not paid?

A. No." (T. 13-14)

2. "Q. Did you ever keep a records of the number of days you worked per week?

A. No." (T. 18)

6. Sprague also testified that she received a minimum of $50.00 and a maximum of $275.00 per days in tips:

1. "Q. Am I correct you were paid on an hourly basis plus tips?

A. Yes.

Q. How much did you receive on an average day in tips?

A. It depended on the day.

Q. Okay. What's the minimum you remember receiving tips?

A. I'd say $50.

Q. What's the maximum you remember?

A. Two seventy-five.

Q. $275?

A. Uh-huh. (T. 20)

4

2. "Q. Let's go back to tips.  How did you know you were being – like the credit cards, did you check that you were receiving the proper amount of tips form the credit card accounts?

A.  No. It printed out a statement, when the bartender printed it out.

Q.  And they gave it – the bartender gave it to you?

A.  Yes.

Q.  When you were a bartender did you do that?

A. Yes.

Q.  Did you print out your own?

A. Yes." (T. 21)

7.  Sprague stated that at times she merely pocketed the cash tips without recording the amount:

1.  "Q. So you knew the amount you received in cash.

A.  Yes.

Q.  Okay. But you didn't always record that amount on your tip slip?

A. No.

Q.  Why did you not record the amount you knew on your tip slip?

A. It's just what we did." (T. 24)

8.  Sprague testified she did not declare for tax purposes all the tip monies she received:

1.  "Q. So am I correct you did not declare the tip moneys that you did not put on your tip sheets?

A. Yes." (T. 48)

(copies of relevant transcript pages are attached as <u>Exh</u>. "C").


_____

Joseph J. Steflik, Jr.


Sworn to before me this 15th
day of September, 2020.


Notary Public

RONITTA J. MCPHERSON
Notary Public, State of New York
No. 01MC6141851
Qualified in Tioga County
Commission Expires February 27, 20 22

6