UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ALICIA SPRAGUE,

                        Plaintiff,

        -against-                                    3:19-CV-1263 (LEK/MJ)

T.C. INN d/b/a THE OLD
SCHOOLHOUSE INN & RESTAURANT
& JULIE MARKERT,

                        Defendants.

_____

**MEMORANDUM-DECISION AND ORDER**

I.      **INTRODUCTION**

        Plaintiff filed her complaint on October 13, 2019, alleging violations by Defendants of

the Fair Labor Standards Act ("FLSA") and New York State Labor Law ("NYLL"). Dkt. No. 1

("Complaint") ¶¶ 1, 22, 26. Plaintiff subsequently filed an amended complaint in early 2020.

Dkt. Nos. 16, 17 ("Amended Complaint"). Plaintiff alleges that she worked overtime hours for

which she was not properly paid under the FLSA. Id. ¶¶ 14–15, 26. Plaintiff also alleges that her

employer did not take a "tip credit"[1] as required by state law and therefore was required to pay a

wage equal to the standard state minimum wage. Id. ¶¶ 12, 22. Further, Plaintiff claims statutory

damages under state law due to her employer's failure to provide the notice and paystub

information required by state law. Id. ¶ 22. Defendants moved for summary judgment on the

_____

        [1]  A "tip credit" is a credit an employer may take to offset the standard minimum wage
under state law when they permit workers to keep tips. For example, in upstate New York the
minimum wage is currently $12.50 per hour. 12 N.Y.C.R.R. § 142-2.1**.** State regulations provide
that employers of tipped food service employees can claim a credit of $2.10, bringing the
employees' base wage down to $10.40 per hour. 12 N.Y.C.R.R. § 146-1.3(b)(3). In order to take
a tip credit, an employer must provide written notice to the employee in accordance with 12
N.Y.C.R.R. § 146-2.2. 12 N.Y.C.R.R. § 146-1.3. At the time of Plaintiff's employment, the tip
credit was structured so that the lowest base wage allowed was $7.50 per hour.

federal law claim, and the parties cross-moved for summary judgment with respect to the state law claims. Dkt. Nos. 20 ("Plaintiff's Motion"), 20-1 ("Plaintiff's Memorandum of Law"), 21 ("Defendants' Cross-Motion"), 21-3 ("Defendants' Memorandum of Law"), 22 (Plaintiff's Reply"). For the reasons that follow, Defendants' motion for summary judgment regarding the FLSA claim is granted only with respect to events occurring before October 13, 2017, and is denied with respect to claims occurring on or after October 13, 2017. With respect to the minimum wage, statutory notice, and wage statement claims, Plaintiff's motion is granted.

## II.    BACKGROUND

The following facts are undisputed, except where otherwise noted.

Defendant T.C. Inn, Inc. ("T.C. Inn") operates a bar and restaurant in Downsville, New York. Dkt. Nos. 42 ("Markert Deposition") at 6; 21-1 ¶ 3. T.C. Inn. is partly owned by Defendant Julie Markert, who is the primary manager of the establishment. Markert Dep. at 9–10. She is responsible for hiring and firing staff, establishing work schedules and rates of pay, and maintaining employment records. Id. at 6–11. T.C. Inn employed Plaintiff Alicia Sprague as a waitress and bartender for approximately four years until her resignation in May of 2019. Id. at 12; Dkt. No. 22-4 ¶ 2.

Employer records indicate that Plaintiff twice worked more than forty hours in a week during the year 2018. Dkt. No. 21-12 ("Payroll Record"). Plaintiff contends that she "regularly" worked over forty hours each week. Dkt. No. 22-4 ¶ 3–4. According to Markert, Plaintiff "rarely" worked overtime, estimating "four or five times a year." Markert Dep. at 16–17.

Plaintiff was paid a "cash wage" of $7.50 per hour for nearly the entire duration of her employment. Payroll Rec. Plaintiff was also permitted to keep tips from customers. Dkt. No. 38

2

("Sprague Deposition") at 11; Markert Dep. at 13. Plaintiff was not provided any written notice of her wage or any tip credit being taken by Defendants. Id. at 13–14, 35. She was also not provided with "pay stubs" accompanying her paycheck, although they were apparently available upon request. Id. at 34–35; Sprague Dep. at 27–29.

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 56 instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, while "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if ... the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Similarly, a party is entitled to summary judgment when the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

In attempting to repel a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

## IV.   DISCUSSION

### A.  Joint and Several Liability

Before addressing the causes of action in the case, the Court must determine whether Defendant Julie Markert is jointly and severally liable alongside Defendant T.C. Inn.

The FLSA defines "Employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Markert certainly qualifies as such. The Second Circuit uses an "economic reality" test to determine when a person is an employer. Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139–40 (2d Cir. 1999). That test consists in part of four factors: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984), holding modified by Zheng v. Liberty Apparel Co., 355 F.3d 61 (2d Cir. 2003).

4

Markert was directly responsible for all four of these activities. Markert Dep. at 6–11. Defendants do not seriously contest this. Thus, Markert is jointly and severally liable under the FLSA.

Regarding joint and several liability for the state claims, the Court applies the same analysis to NYLL claims as it does under the FLSA. See Inclan v. N.Y. Hosp. Grp., Inc., 95 F. Supp. 3d 490, 511 (S.D.N.Y. 2015) ("[D]istrict courts in this Circuit have consistently interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition used by the FLSA."). Thus, Markert is also jointly and severally liable under the NYLL.

### B.  Fair Labor Standards Act Overtime Claim

Only Defendants are moving for summary judgment on the FLSA claim. To defeat the motion, Plaintiff must show that a genuine dispute of material fact is present regarding the alleged overtime hours worked. Kuebel v. Black & Decker, Inc., 643 F.3d 352, 365 (2d Cir. 2011). The Court will address the Defendants' two arguments in turn, before determining whether there is a genuine dispute of material fact.

#### 1.  De Minimis Argument

Defendants attempt to negate liability by invoking the de minimis doctrine that the Supreme Court has applied to some FLSA cases. However, the doctrine cannot be applied to these facts. The doctrine is properly invoked when employees allege a lack of compensation for "preliminary and postliminary" work, such as "donning and doffing" work equipment or undergoing security checks. IBP, Inc. v. Alvarez, 546 U.S. 21, 30 (2005). The Second Circuit has employed a three-factor test in such cases, Reich v. N.Y.C. Transit Auth., 45 F.3d 646, 652

(2d Cir. 1995), which aims to determine whether such work is compensable under FLSA.[2]

In the case before the Court there is no question that the work is compensable. Defendants are not claiming that the overtime hours allegedly worked by Plaintiff are the result of uncompensable "preliminary and postliminary" activities. Rather, as far as the record reflects, any work Plaintiff performed over forty hours in a week was the same type of work she performed at any other time. Defendants' argument that Plaintiff worked only a small amount beyond forty hours and therefore is not entitled to be compensated is unfound. The de minimis doctrine has never been applied to overtime work in this way.[3]

By invoking the de minimis doctrine, Defendants are attempting to fit a round peg in a square hole. Cf. id.; Lindow v. U.S., 738 F.2d 1057 (9th Cir. 1984); Brusstar v. Se. Pa. Transp. Auth., No. 85-CV-3773, 1988 WL 85657, *5 (E.D. Pa. Aug. 17, 1988); IBP, 546 U.S. 21. The Court's review of de minimis FLSA cases leads the Court to conclude that the doctrine is inapplicable to the facts of this case and cannot support Defendants' motion for summary judgment.

---

[2] The factors are given as "(1) the practical administrative difficulty of recording the additional time; (2) the size of the claim in the aggregate; and (3) whether the claimants performed the work on a regular basis." Reich, 45 F.3d at 652 (internal quotes omitted). In this case, a detailed analysis of the factors is unnecessary since the de minimis doctrine is inapplicable. But even if the Court were to apply the doctrine here, it is clear the factors (1) and (3) will heavily favor Plaintiff since there is no administrative difficulty and the overtime worked is the same type of work she always performed. The valence of factor (2) is unclear because there is a factual dispute as to how much overtime Plaintiff worked. Thus, Defendants could not prevail at summary judgment even if the  prevail under this analysis even if the de minimis doctrine were applicable.

[3] In addition to the mistaken application of the doctrine, there remains a genuine dispute of material fact, as described in subsection (3) below, rendering summary judgement inappropriate. Plaintiff claims she worked far more overtime hours than are presented in Defendants' records. If a jury credits this claim, Defendants' de minimis argument may be entirely moot.

2. *Statute of Limitations*

The FLSA has a two-year statute of limitations that can be extended to three years if the plaintiff proves the defendant's violations were "willful." 29 U.S.C. § 255(a). Plaintiff bears the burden of proving the employer acted willfully, and as Plaintiff has not argued that Defendants' actions were willful, the Court will consider the point conceded. See Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 141 (2d Cir. 1999); Adams v. U.S., 350 F.3d 1216, 1229 (Fed. Cir. 2003) ("Unlike good faith, the employee bears the burden of proving the willfulness of the employer's FLSA violations.") (citation omitted). Thus, Plaintiff cannot recover for causes of action that accrued more than two years before her Complaint was filed.

When considering when a cause of action has accrued, "[c]ourts have held that for the purposes of establishing the statute of limitations under the FLSA, a new cause of action accrues with each payday following an allegedly unlawful pay period." Addison v. Reitman Blacktop, Inc., 283 F.R.D. 74, 81–82 (E.D.N.Y. 2011) (internal quotations and citations omitted); see also 29 C.F.R. § 790.21(b) ("[A] cause of action under the Fair Labor Standards Act for unpaid minimum wages or unpaid overtime compensation and for liquidated damages 'accrues' when the employer fails to pay the required compensation for any workweek at the regular pay day for the period in which the workweek ends."). Accordingly, Plaintiff cannot recover on any paychecks issued more than two years before the date of filing the complaint.

No equitable tolling doctrine, such as the "continuing violations" doctrine, applies in this case. That doctrine is typically applied in cases where (1) a discriminatory act occurred within the limitations period but began outside the limitations period and (2) that act has caused present and future harm. Pollis v. New Sch. for Soc. Rsch., 132 F.3d 115, 118–119 (2d Cir. 1997). The

7

Second Circuit has not recognized this doctrine in cases of unlawful overtime violations because each violation is considered a discrete and independent cause of action. Id. at 119. Thus, the two-year statute of limitations applies.

Plaintiff's Complaint was filed on October 13, 2019. See Docket. Therefore, Plaintiff may not recover on the FLSA claim for causes of action accruing before October 13, 2017. Payroll records show that Plaintiff worked more than forty hours in two separate weeks during the year 2018. Those claims will not be barred by the statute of limitations. Plaintiff also alleges other instances of overtime work not recorded in the payroll records. Those causes of action are not barred to the extent that the payday associated with the unlawful act occurred on or after October 13, 2017; events connected to paydays before that date are time-barred and therefore not recoverable.

### 3.  A Genuine Dispute of Material Fact is Present

Given that Plaintiff's claim is not barred by the statute of limitations or the de minimis doctrine, the Court must consider whether Plaintiff has created a genuine dispute of material fact with respect to the FSLA overtime claim. Among the evidence offered by Plaintiff includes the following: (1) Plaintiff's own affidavit and deposition testimony that she "regularly" worked over forty hours each week, Dkt. No. 22-4 ¶ 3–4; (2) Markert's deposition stating she did not keep records of the original daily timesheets, and so the record of hours worked is simply a weekly summary created by Markert herself, Markert Dep. at 17–18; and (3) Defendants' own records showing that Plaintiff worked a small amount of overtime on two occasions during the year 2018 and was not paid for that work in accordance with the FLSA, Payroll Rec.

8

To determine whether Plaintiff has created a genuine dispute, the Court must undertake an analysis of Plaintiff's burden at trial under FLSA. Kuebel, 643 F.3d at 364–65. Defendants correctly point out that the burden is on Plaintiff in such cases. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686–87 (1946). But Plaintiff's burden is balanced against the fact that FLSA places the burden of record keeping on the employer, and the employer has access to the records needed to prove the case. Id. at 687. Further, Kuebel instructs that when an employer's records are "inaccurate or inadequate, an employee need only present sufficient evidence to show the amount and extent of [the uncompensated work] as a matter of just and reasonable inference." 643 F.3d at 362. Accordingly, the employee's burden is not high and may be discharged by relying on the employee's own recollection. Id.

Here, Markert testified that the original daily timesheets filled out by employees have not been preserved, and that the only available records are computer printouts created by Ms. Markert that purport to show the number of hours worked each week. Markert Dep. at 17–18. Given that Plaintiff has contested the accuracy of these records and the original records cannot be recovered, it may be fairly said that these records meet Kuebel's definition of "inadequate," and therefore the employee's burden is lowered and the question for the Court is whether Plaintiff has presented "sufficient evidence to show the amount and extent of [the uncompensated work] as a matter of just and reasonable inference." 643 F.3d at 362. This Court has also held that "non-conclusory affidavit or witness's testimony, when based on personal knowledge and directed at a material issue, is sufficient to defeat summary judgment." McLean v. LaClair, No. 19-CV-1227, 2021 WL 671650, at *6 (N.D.N.Y. Feb. 22, 2021) (Kahn, J.) (quoting Lupyan v. Corinthian Colls., Inc., 761 F.3d 314, 320–321 (3d Cir. 2014)).

9

Defendants' own records show that Plaintiff worked overtime on two occasions. This, surely, is sufficient evidence as to those instances. Further, when coupled with the fact that the original timesheets are lost and Markert estimated in her deposition that Plaintiff worked overtime "four or five times a year," this evidence could support an inference that Plaintiff worked other overtime beyond the instances presented in the payroll records.

In light of the above, we conclude that Plaintiff has produced enough evidence to allow a jury to find Plaintiff's burden satisfied. The burden then shifts to the employer, who must produce accurate records or other evidence to negate the reasonableness of the inference. Anderson, 328 U.S. at 687. Here, Defendants have not produced sufficient evidence to negate the inference and as such the Court cannot grant Defendants' motion for summary judgment on the FLSA overtime claim.

To address Defendants' argument that Plaintiff's allegations are "threadbare recitations," Dkt. No. 26 at 2, and that Plaintiff's "Complaint and affidavits are nearly devoid of any factual content alleging the details of Plaintiff's employment," id. at 3, the Court points out that this case is well past the stage when such arguments could have had merit. Defendants rely on Dejesus v. HF Mgmt. Servs., LLC, 726 F.3d 85 (2d Cir. 2013), to support their argument. This is unpersuasive because Plaintiff's allegations in that case had significantly less factual basis than in this case. In Dejesus, the plaintiff provided no estimates at all from which a jury could infer plausibility or accurately estimate damages. Id. at 89. Here, Plaintiff supplied evidence that she worked overtime "four or five times a year" and has shown that she is entitled to Keubel's relaxed standard of approximating damages. Procedurally, Dejesus cannot be applied because it concerns a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Id. at 87. The proper time to

question the pleadings was before answering the Complaint or before discovery. See Fed. R. Civ.

P. 12(b) ("A motion asserting any [Rule 12(b)] defenses must be made before pleading . . . .").

At this point, discovery has revealed that Plaintiff did work two weeks of overtime for which she

was not compensated, and Markert stated in her deposition that Plaintiff worked overtime "four

or five times a year" and that the records were merely weekly compilations and not originals.

These facts create a genuine dispute of material fact that precludes summary judgment.

Thus, Defendants' motion for summary judgment on the FLSA overtime claim is denied

with respect to events occurring on or after October 13, 2017.

### C.  New York State Claims

Because the Court will continue to exercise jurisdiction over the federal claim,

supplemental jurisdiction over the state claims is proper and Defendants' contention that

supplemental jurisdiction is improper is moot. See 28 U.S.C. § 1367. The Court will proceed in

analyzing the state claims.

Plaintiff asserts three claims for damages arising under NYLL § 198. First, Plaintiff

asserts she is entitled to damages in the form of back wages equal to the difference between the

non-tipped minimum wage and the tipped wage because her employer never took a tip credit.

Second, Plaintiff asserts she is entitled to $5,000 in statutory damages under NYLL § 198(1-b)

because her employer never provided notice as required by NYLL § 195(1)(a). Third, Plaintiff

asserts she is entitled to $5,000 in statutory damages under NYLL § 198(1-d) because her

employer did not provide paystubs in accordance with NYLL § 195(3). Claims under NYLL

carry a six-year statute of limitations; all Plaintiff's work occurred within the limitations period.

See NYLL § 198(3). Each cause of action is considered in turn below.

*1. Minimum Wage Claims*

Plaintiff argues that due to Defendants' failure to provide written notice of her wage and tip credit as required by NYLL § 195(1) and accompanying regulations, Defendants were not entitled to take a tip credit and instead are required to compensate Plaintiff at least the full value of the New York State minimum wage. The question for the Court is whether Defendants can claim a tip credit despite failing to comply with NYLL § 195(1) and accompanying regulations.

### a. Employer is not Entitled to a Tip Credit

Generally, cases in the Second Circuit have taken the requirement of notice literally. Garcia v. Saigon Mkt. LLC, No. 15-CV-9433, 2019 WL 4640260 at *7 (S.D.N.Y. Sept. 24, 2019) (noting that "notice of the tip credit under the NYLL 'must be written'" and "[p]rior to the start of employment, an employer shall give each employee written notice of . . . the amount of tip credit, if any, to be taken from the basic minimum hourly rate.") (quoting 12 N.Y.C.R.R. § 146-2.2(a) and Gamero v. Koodo Sushi Corp., 272 F. Supp. 3d 481 (S.D.N.Y. 2017), aff'd, 752 F. App'x 33 (2d Cir. 2018)). These decisions interpret 12 N.Y.C.R.R. §§ 146-1.3 and 146-2.2, which state that notice is required and provide a template form of sufficient notice. Verbal notice is not a substitute. Id. Both parties agree that notice was not given in accordance with state law, and both parties agree that Plaintiff was paid $7.50 per hour, less than the New York State minimum wage. Payroll Rec.; 12 N.Y.C.R.R. § 142-2.1. There are no issues of fact remaining that prevent a decision on summary judgment.

The majority of cases hold that when an employer does not comply with the notice requirements, it cannot claim a tip credit and the employee is entitled to recover an amount equal to the normal minimum wage. See, e.g., Garcia, 2019 WL 4640260 at *7 (quoting Salustio v.

106 Columbia Deli Corp., 264 F. Supp. 3d 540, 554 (S.D.N.Y. 2017)); Gamero, 272 F. Supp. 3d

at 501. Employers cannot claim a tip credit by hanging posters or giving verbal notice. See

Pineda v. Frisolino, Inc., No. 15-CV-3774, 2017 WL 3835882 at *12 n.15 (S.D.N.Y. Aug. 29,

2017).

     Defendants attempt to rely on a minority rule articulated in Carvente-Avila v. Chaya

Mushkah Restaurant Corp. to provide an escape from liability. No. 12-CV-5359, 2016 WL

3221141 at *1 (S.D.N.Y. Mar. 1, 2016) ("a food service employer is eligible to claim the tip

credit even when they fail to provide written notice of the tip credit rules[,] provided that the

employer can demonstrate compliance with all of the other minimum wage requirements and that

their employees understood the manner in which the employer took the tip credit.") (internal

citation omitted). However, the New York State Department of Labor opinion letter relied on by

Carvente-Avila has not been followed in other cases, and the Court declines to follow it here.

See Garcia, 2019 WL 4640260 at *9.

     If the Court were to apply the rule in Carvente-Avila, Defendants still cannot prevail

because they have offered no evidence that Plaintiff understood she was taking a tip credit.

Plaintiff apparently understood that she was receiving a wage of $7.50 per hour, and she

understood that she was allowed to keep tips, but this does not mean she understood that a tip

credit was taken. She may have thought that New York followed the federal minimum wage of

$7.25, and in fact New York had raised its minimum wage above that threshold only sixteen

months before Plaintiff began working for Defendants. Regardless, the burden is on the

employer to show that the employee understood the alleged tip credit arrangement, and

Defendants have not carried that burden. Carvente-Avila, 2016 WL 3221141 at *1 (noting that a

13

tip credit can only be claimed absent written notice when "employer can demonstrate compliance"). To the contrary, Markert's deposition testimony suggests she did not understand tip credits herself, Markert Dep. at 13–15, and her affidavit and Statement of Material Facts plainly say that Defendants did <u>not</u> take a tip credit. Dkt. No. 21-2 ¶ 6; Dkt. No. 21-4 ¶ 6. Therefore, Defendants still fail under <u>Carvente-Avila</u>'s reasoning.

Applying the relevant case law, the Court concludes that Defendants were not entitled to a tip credit. Accordingly, Defendants' motion for summary judgment on the minimum wage cause of action is denied and Plaintiff's motion is granted.

The Court will use the Defendants' records as the basis for calculating back wages, because neither party contends that Plaintiff worked less than the hours recorded in Defendants' payroll records. If a jury finds at trial that Plaintiff worked additional hours and that she was not paid the correct wages for those hours, further damage calculations may be required.

Plaintiff can recover the difference between the normal hourly minimum wage and the wage she was actually paid for each hour she worked for Defendants. <u>See, e.g.,</u> <u>Baltierra v. Advantage Pest Control Co.,</u> No. 14-CV-5917, 2015 WL 5474093, at *5 (S.D.N.Y. Sept. 18, 2015) ("amount of minimum wages owed per hour" are determined "by subtracting the [actual] rate [of payment] from . . . the statutory minimum wage."). As shown in Appendix A, the Court has calculated damages by awarding back wages equal to this difference.[4]

---

[4] Appendix A is based on Plaintiff's Exhibit D, Dkt. No. 20-7. The Court has compared this exhibit with Defendants' payroll records and corrected discrepancies to match Defendants' records. Payroll Rec.. The following changes to Plaintiff's records are reflected in Appendix A:

• The dates in Appendix A reflect pay days rather than the last day of the pay period. This is because under NYLL, a cause of action accrues with each pay day, not the end of the pay week.

Plaintiff's damages are calculated in accordance with the table in Appendix A. In total, Plaintiff is awarded $14,008.99 plus reasonable costs and attorney's fees for this cause of action.

### b. Liquidated Damages

In addition to actual damages, NYLL § 198(1-a) provides that an employee is entitled to liquated damages equal to 100% of actual damages on a claim "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law."[5] NYLL § 198(1-a). In this case, Defendants argue that they relied on a bulletin from the Empire State Restaurant and Tavern Association, a food industry trade group, that informed members that the minimum wage was increasing over time and that the cash wage rate would be two-thirds of the minimum wage. Dkt. No. 21-10. This reliance is flawed, however, because the

- The entry for November 25, 2015, has been updated to reflect that Plaintiff worked 16.75 hours during that pay period. Although the parties do not elaborate on why Defendants' records show the Nov. 25th pay day and the Nov. 19th payday as compensating the same week of work (Nov. 9–15), it appears to be nothing more than a clerical error and the Court will presume that Plaintiff did work the hours shown in both paycheck.

- The entry for January 7, 2016, has been modified to reflect that Plaintiff worked some hours at a $5.00 per hour rate, and the remaining hours at a $7.50 per hour rate, as indicated in Defendants' records.

- The entry for March 29, 2018, has been moved to the following week, April 5, 2018. This is done to better reflect when Plaintiff likely had a one-week break from work. This change does not affect total damages.

- The entry for January 10, 2019, has been changed to reflect 25.25 hours worked. Plaintiff's exhibit mistakenly indicated 26.25 hours worked.

[5] Although "[t]he statutory text of the liquidated damages provisions of the present NYLL is not identical to that of the FLSA," compare N.Y. Labor Law §§ 198(1–a), 663(1), with 29 U.S.C. § 260, "courts have not substantively distinguished the federal standard from the current state standard of good faith. See, e.g., He v. Home on 8th Corp., No. 09-CV-5630, 2014 WL 3974670, at *7 n. 19 (S.D.N.Y. Aug. 13, 2014); Eschmann v. White Plains Crane Serv., Inc., No. 11-CV-5881, 2014 WL 1224247, at *9 (E.D.N.Y. Mar. 24, 2014)." Inclan v. New York Hosp. Grp., Inc., 95 F. Supp. 3d 490, 505 (S.D.N.Y. 2015).

bulletin does not reference the formal requirements for taking a tipped wage. A person reading the bulletin comes away with no knowledge of how to provide notice or how to take a tip credit. It simply informs the reader that the State has enacted a new law that will increase the minimum wage. Since the bulletin has nothing to do with notice requirements or the legal obligations of taking a tip credit, it cannot serve as a basis of good faith.

In general, an employer unaware of its legal obligations is insufficient to establish a good-faith defense under the law. "[A] showing of good faith 'requires more than ignorance of the prevailing law or uncertainty about its development.'" Vazquez v. 142 Knickerbocker Enter., Corp., 409 F. Supp. 3d 81, 89 (E.D.N.Y. 2018) (quoting Reich v. S. New England Telecomms. Corp., 121 F.3d 58, 71 (2d Cir. 1997)). Defendants' underpayment of wages could have been avoided had they made an effort to understand "the dictates of the [law] and then act[ed] to comply with them," Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999), but the Defendants apparently failed to learn that a tip credit could only be claimed when written notice of the credit was provided. In Chichinadze v. BG Bar Inc. the employer allegedly failed to pay staff wages and argued it acted in good faith because it had consulted with an accountant and relied on a third-party payroll service. No. 18-CV-8069, 2021 WL 429948 (S.D.N.Y. Feb. 8, 2021). The court found this was not enough to prove good faith under the law. Id. at *12–13. Defendants in this case made even less of an effort than the defendant in Chichinadze, and the Court finds no facts in the record that can support a showing of good faith. Accordingly, Plaintiff is entitled to liquidated damages equal to $14,008.99.

### 2. *Required Notice and Wage Statements*

Plaintiff alleges she is entitled to statutory damages under NYLL §§ 198(1-b) and 198(1-d) because her employer violated §§ 195(1) and 195(3), which require that an employer provide, respectively, written notice of certain employment conditions, including pay rate and amount of any tip credit, and wage statements with each paycheck. Each is considered in turn.

### a. Required Notice

NYLL § 195(1) provides that written notice must be given to all employees in accordance with the requirements of 12 N.Y.C.R.R. §§ 146-1.3 and 146-2.2. Failure to comply with this section carries statutory damages of $50 each workday that the violations occurred, up to $5,000, in addition to reasonable costs and attorney's fees. In this case, both parties agree that no written notice was ever given, although Markert asserts that verbal notice of the tip credit was given. This plain violation of § 195(1) and accompanying regulations is not disputed. The legislature has provided for two affirmative defenses that a defendant may invoke, and indeed, Defendants raised these defenses in their answer. NYLL § 198(1-b) provides:

> In any action . . . to recover damages for violation of [§ 195(1)(a)] of this article, it shall be an affirmative defense that (i) the employer made complete and timely payment of all wages due pursuant to this article or article nineteen or article nineteen-A of this chapter to the employee who was not provided notice as required by [§ 195(1)] of this article or (ii) the employer reasonably believed in good faith that it was not required to provide the employee with notice pursuant to [§ 195(1)].

NYLL § 198(1-b).

Although they raised the good faith defense in their answer, Defendants did not argue in their briefs that the good faith defense applies here. If it had, the Court would apply the same

17

reasoning applied to the good faith discussion above. See supra Section C(1)(b). As such, Defendants cannot succeed on this defense.

Regarding the other defense, which excuses liability when "the employer made complete and timely payment of all wages due pursuant to this article or article nineteen [of the Labor Law]," the Court has already concluded in Section C(1)(a) that Defendants did not pay all wages as required by law. See supra, at 11-14. Therefore, Defendants are not entitled to this defense. Defendants' reliance on Ahmed v. Morgans Hotel Grp. Mgmt., LLC is misplaced, because in that case, unlike here, the employee received notice that substantially complied with the notice requirements. 55 N.Y.S.3d 691 (N.Y. Sup. Ct. 2017), aff'd, 74 N.Y.S. 3d 546 (2018). The defendant there produced a written notice, signed by the employee, notifying the employee of his wage and tip credit. The only thing missing from the notice was a statement that the employer was required to pay at least minimum wage if the employee's tips did not equal the normal hourly wage. Id. at *3–*4. But the evidence showed that the employee was always paid more than the minimum wage, and so he never had reason to invoke his right to the minimum wage. This, as Ahmed points out, is exactly the type of "technical violation" that the legislature intended to excuse. Id. at *4. In the present case, there was no notice at all, and, as a result, significant confusion over wages arose.

Therefore, we hold that Defendants are liable for failure to provide notice and Plaintiff is entitled to the maximum statutory damages of $5,000, plus reasonable costs and attorney's fees.

### b.  Wage Statements

NYLL § 195(3) states, "Every employer shall . . . furnish each employee with a statement with every payment of wages." (emphasis added). The facts suggest that Defendants provided

18

paystubs only sporadically and only when requested, rather than the required weekly statement. Apparently, Markert gave Plaintiff the option to receive paystubs or not, and, according to Markert, Plaintiff choose to not receive them. This arrangement, however, is contrary to the letter and intent of the law. The law does not permit an employer to discharge this responsibility by receiving an employee's consent to not provide pay statements, nor is liability excused because Defendants made pay stubs available upon request. Cf. Pineda, 2017 WL 3835882 at *13 (finding employer liable when notice was not actually provided or was provided but was inadequate).

While NYLL § 198(1-d) provides for a similar affirmative defense as § 198(1-b), the defense is again not available to Defendants for the reasons stated previously. Accordingly, Defendants are liable on this cause of action.

Under NYLL § 198(1-d), employees are entitled to recover wage-statement statutory damages of $250 dollars "for each workday that the violations occurred or continue to occur," not to exceed $5,000, plus reasonable costs and attorney's fees. The record supports the conclusion that Plaintiff did not receive pay stubs for at least 20 workdays during her employment, and therefore Plaintiff is entitled to the maximum $5,000 in damages under this cause of action, plus reasonable costs and attorney's fees.

### D. Interest

A sister court within this Circuit recently summarized the applicable rules regarding prejudgment interest under NYLL:

> "Prejudgment interest may be awarded in addition to liquidated damages under [the] NYLL[.]" "New York law sets the relevant interest rate at nine percent per year." And to determine when prejudgment interest begins to accrue, "[c]ourts applying [the] NYLL

19

> in wage-and-hour cases 'often choose the midpoint of the plaintiff's employment within the limitations period.'"
>
> An NYLL plaintiff may recover prejudgment interest only on his "actual damages . . . under the NYLL, . . . not [his] liquidated damages." "Prejudgment interest is [also] not available for violations of the wage statement or wage notice provisions."

Gamero, 272 F. Supp. at 515 (internal citations omitted).

Accordingly, Plaintiff is entitled to prejudgment interest of 9% per year on the back wages owed pursuant to § 198(1-a) as applied from the midpoint of Plaintiff's employment, which is August 3, 2017.[6]

Lastly, as stated in NYLL § 198(4), "if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent."

## V.   CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that with respect to the FLSA overtime claim, Defendants' motion for summary judgment (Dkt. No. 21) is **GRANTED** with respect to events occurring before October 13, 2017 and **DENIED** with respect to events occurring on or after October 13, 2017; and it is further

**ORDERED**, that with respect to the NYLL claims, Plaintiff's motion for summary judgment (Dkt. No. 20) is **GRANTED** and Defendants' motion for summary judgment (Dkt. No. 21) is **DENIED**; and it is further

---

[6]  Plaintiff's first paycheck is dated October 8, 2015, and her final paycheck is dated May 30, 2019. The midpoint of that employment is the paycheck dated August 3, 2017.

**ORDERED**, that judgment be entered for Plaintiff in the amount of $38,017.98 ($14,008.99 for the minimum wage claim plus $14,008.99 in liquidated damages plus $5,000 in statutory damages under NYLL § 198(1-b) plus $5,000 in statutory damages under NYLL § 198(1-d)) plus prejudgment interest and reasonable attorney's fees; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:     August 16, 2021
           Albany, New York

Lawrence E. Kahn
U.S. District Judge